Billy Joe GARRETT,
Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana
State Penitentiary and William J. Guste,
Jr., Attorney General of Louisiana, Re-
spondents-Appellees.

No. 81–3615
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1982.

Billy Joe Garrett, pro se, and William
Patrick Quigley (Court-Appointed), New
Orleans, La., for petitioner-appellant.

John H. Craft, Asst. Dist. Atty., New
Orleans, La., William G. Guste, Atty. Gen.,
Baton Rouge, La., for respondents-appel-
lees.

Before GEE, RUBIN and WILLIAMS,
Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A prisoner confined to the Louisiana
State Penitentiary for twenty-three years,
after pleading guilty to a charge of murder
and being sentenced to life imprisonment,
seeks habeas corpus because his plea was
entered at a time when he could expect
release after serving ten and one-half years,
and Louisiana law and policy have since

changed so that he has not been released. The petition is phrased more ingeniously, and terms the statements of counsel who negotiated the plea bargain as "promises." In effect, the petitioner's claim depends on a change in state law adverse to him relative to the commutation of sentences. Finding that the change in state law did not make his plea involuntary and that his alternative argument of a coerced plea was filed untimely, we affirm the denial of relief.

Billy Joe Garrett was charged with murder in 1959. Represented by appointed counsel, he made a bargain to plead guilty to a lesser charge of murder without capital punishment, knowing that he would be sentenced to life imprisonment. Garrett's lawyer correctly informed him that, under Louisiana law, if his behavior was good, he would be released in ten and one-half years.[1] That this was then accurate is not disputed.

The record establishes that Garrett understood good behavior to be a condition of commutation. Garrett testified at the hearing that his lawyer told him: "[Y]ou are going to the penitentiary." Garrett added, "He said you are going for ten years and six months. Don't worry about it. You keep your nose clean, I will get you out."

In 1975, sixteen years after Garrett's plea, the Louisiana commutation statute was changed to read:

The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons as hereinafter provided for by this Part, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. La.Rev.Stat.Ann. § 15:572 (West 1982). Garrett alleges, and we accept as a fact for purposes of this opinion, that the practice of the present governor is not to grant early commutation.

Garrett had served ten and one-half years by 1975. The record does not show whether he then sought commutation and was denied it, but he concedes that he would not likely have been released immediately. He did not have an exemplary prison record, and Louisiana practice was to "add some time" to the minimum for prisoners whose record was marred.

In 1979 Garrett filed this habeas petition. He alleged that his guilty plea was coerced, induced by a broken plea bargain, and that he had not been informed of his rights. The district court found that he had been fully informed, and denied the second contention for want of merit. It found that consideration of the coercion claim was barred by delay in filing, and dismissed the petition. On appeal, we reversed and remanded for an evidentiary hearing on the delay issue. Garrett had by then abandoned the claim that he had not been informed of his rights.

The lawyer who represented Garrett in the state court had died in the meanwhile. Counsel was appointed to represent Garrett at the evidentiary hearing. After the hearing, the magistrate found that Garrett had not complied with his part of the plea bargain. He also found that Garrett's twenty-year delay in filing the habeas petition was unreasonable and had actually prejudiced the state in responding to his coercion alle-

---

1. La.Rev.Stat.Ann. § 15:571.7 (West 1959) then provided:

"Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary, he may apply for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor may commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had, or any two of them. No commutation under the provisions of this Section shall reduce the period of incarceration to less than ten (10) years and six (6) months."

In fact, Garrett's sentencing judge testified at the evidentiary hearing that about 90 per cent of those sentenced to life imprisonment about the time Garrett was sentenced received commutation after ten and one-half years.

gations. He, therefore, recommended that the petition be dismissed. The district court adopted the magistrate's findings and recommendation and dismissed the petition.

## I.

 Garrett contends that he pled guilty because his attorney "promised" that life imprisonment actually meant serving ten years and six months. He argues that the subsequent change in the law constituted a breach of the plea bargain. "When a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980), *citing Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1969). However, it is purely a play on words to call the original statement by Garrett's lawyer a "promise." The statement was an accurate representation of Louisiana law as it then stood. Garrett's lawyer gave no assurance that the law was immutable. Nor did the state make Garrett any commitment.

The statutory change did not bar commutation of Garrett's sentence—indeed, it removed the minimum period of confinement prior to eligibility for commutation. Nor did the statutory change affect Garrett's chances for a commuted sentence when he first became eligible. He had been confined for ten and one-half years long before the alleged change in practice in 1975. As the magistrate found, and Garrett concedes, he had not exhibited the good conduct in prison that would have merited commutation under the old statute. In sum, there is nothing in the change in law sixteen years after Garrett's imprisonment that can be construed as a breach of a plea bargain by the state or a violation of a promise by Garrett's lawyer.

## II.

Garrett also contends that his guilty plea was coerced by the inhumane conditions in the Orleans Parish prison in 1959. He claims he was kept in solitary confinement for thirty days without being allowed to shower, shave, or change clothing, was fed only one sandwich a day, and that the prison warden told him he would remain in solitary until he left for the penitentiary. In addition, he claims his attorney gave him the impression that he was simply being released from solitary confinement when he was actually being taken before a judge to plead guilty.

The parties stipulated that Garrett's trial counsel died in 1977. There is no record of the guilty plea proceeding, and the sentencing judge and prosecutor lack any independent recollection of it. Garrett has offered no acceptable excuse for his twenty-year delay in seeking habeas relief on this issue. The district court found that this delay prejudiced the state in responding to Garrett's allegations about his confinement in 1959, and about the representations of the warden and attorney. This conclusion is fully supported by the record.

For these reasons the judgment is AFFIRMED.