**Herman SMITH, Jr.,**
**Petitioner-Appellant,**

**v.**

**Frank BLACKBURN, Warden,**
**Louisiana State Penitentiary,**
**Respondent-Appellee.**

**No. 85–3601**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Decided March 24, 1986.

Robert F. Barnard, Appellate Federal Public Defender, New Orleans, La., for petitioner-appellant.

J. Abbott Reeves, Asst. Dist. Atty., Gretna, La., Aubert D. Talbot, Dist. Atty., 23rd Judicial Dist. of La., Napoleonville, La., for respondent-appellee.

Before RUBIN, REAVLEY, and HILL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Herman Smith, a prisoner for the last 20 years at Angola Penitentiary, contends in this habeas corpus petition that the state's failure to release him after he had served ten and one-half years of his life sentence for aggravated rape, pursuant to a guilty plea, constitutes a violation of the plea bargain he entered into and thus invalidates and renders involuntary his plea. The district court disagreed and dismissed his petition with prejudice. Finding that Smith has sustained his burden of proof and has established a right to the relief he seeks, we reverse.

## I.

In 1965, Herman Smith was indicted and arraigned for the crime of aggravated rape. Under Louisiana law at that time, if the jury found the defendant guilty, it had discretion only to impose either life imprisonment or the death penalty.[1] Smith pleaded guilty to the offense of aggravated rape without capital punishment and, on November 24, 1965, received a mandatory sentence of life imprisonment at hard labor. There is no record of the proceedings at the time he entered his plea.

At that time, a prisoner sentenced to life imprisonment in Louisiana could apply for commutation of his sentence after ten

1. La.C.Cr.P. art. 817.

years and six months.[2] The governor had discretion to commute the sentence to time served, but the state concedes that, if the prisoner's behavior had been good, his case was automatically submitted to the governor who would usually commute the sentence.[3] This practice changed during the 1970's. No longer were commutation applications automatically submitted on behalf of a life sentencer by the prison warden after 10 years and six months. Additionally, in 1975, the Board of Pardons was reconstituted and more formal procedures governing its review of pardon applications were established.[4] Finally, in 1979, the statute providing for commutation of life sentences was repealed.[5] Although prisoners may now ask the governor to commute their sentence,[6] the magistrate found and the state does not deny that it is the policy of the present governor not to grant commutations.[7]

When Smith had served ten and one-half years of his sentence, in April 1976, he applied to the pardon board for commutation of his sentence, and his application was denied. We are informed that later, after this petition was filed, the Pardon Board recommended that his sentence be commuted to fifty years, making him immediately eligible for parole,[8] but the governor has apparently refused to follow the pardon board's recommendation. In the meanwhile, after Smith's first application for parole was denied, nine years ago, he sought a state writ of habeas corpus challenging his continued imprisonment. This petition was eventually denied by the Louisiana Supreme Court in 1979. Smith had also requested resentencing from the court that had originally imposed his sentence.

This petition too was denied on August 8, 1980.

This is the latest in a string of nine federal habeas corpus petitions filed by Smith attacking his sentence and conviction. He contends that the state has not adhered to the promises it made to induce his plea of guilty, namely, that he would be released after ten and one-half years of incarceration, provided he exhibited good behavior during that time. The state's failure to keep its promise, he argues, invalidates his plea and renders it involuntary.

The state has admitted by way of a stipulation entered into the record, and signed by the assistant district attorney presently representing the state, Abbott J. Reeves, on behalf of Aubert Talbot, the former district attorney who prosecuted Smith, that, indeed, Smith was "led to believe" that, assuming his behavior was good during his incarceration, he "would be released" after serving ten years and six months imprisonment. The state, therefore, apparently does not contest that the writ should issue. We are informed that its counsel repeatedly so advised the magistrate.

Both the magistrate and the district court held evidentiary hearings at which the testimony of Smith, the attorney who represented him when he pleaded guilty, Risley P. Triche, an able and experienced lawyer, and district attorney Talbot was presented. On the basis of the testimony adduced during these proceedings and the evidentiary record complied, including the record of Smith's earlier habeas petitions, the district court, ignoring the stipulation and the state's apparent lack of objection to the petitioner's release, denied Smith relief.

---

**2.** La.Rev.Stat.Ann. § 15:571.7.

**3.** *See Dunn v. Maggio,* 712 F.2d 998 (5th Cir. 1983), *cert. denied,* 465 U.S. 1031, 104 S.Ct. 1297, 79 L.Ed.2d 697 (1984).

**4.** *Compare* 1975 La.Acts 593 secs. 1 & 2 (codified as amended at 15 La.Rev.Stat.Ann. § 572.-1–.7 (1981)) *with* La.Rev.Stat.Ann. § 15:572 (1950).

**5.** La.Rev.Stat.Ann. § 15:571.7, *repealed by* 1979 La.Acts 490 sec. 2.

**6.** La.Rev.Stat.Ann. § 15:572 (1981).

**7.** *See Garrett v. Maggio,* 685 F.2d 158, 159 (5th Cir.1982), *cert. denied,* 459 U.S. 1114, 103 S.Ct. 747, 74 L.Ed.2d 966 (1983).

**8.** *See* La.Rev.Stat.Ann. §§ 15:574.4(A)–(B) (1981 & Supp.1985).

## II.

■ A petitioner who pleaded guilty in reliance on Louisiana law in effect when the governor had the power to, and usually did, commute sentences has no constitutional right to a pardon or early parole based on the Louisiana law in effect at the time of his plea and sentence.[9] There is no implied warranty that state law will not change.

■ However, the state's failure to keep a plea bargain it has made to induce a defendant to enter a guilty plea is reason for granting a writ of habeas corpus,[10] for a plea bargain is not merely a contract between the defendant and the state but, in addition, induces the accused to waive important constitutional rights.[11] As we said in *McKenzie v. Wainwright*,[12] "when a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." A petitioner who relies on such an unfulfilled state promise to obtain his release may not rely on conclusory allegations or even his own unsupported testimony. He must prove: 1) the exact terms of the alleged promise; 2) exactly when, where, and by whom such a promise was made; and 3) the precise identity of an eyewitness to the promise.[13]

■ The government must "adhere strictly to the terms and conditions of the plea agreement it negotiates."[14] The petitioner need not show, therefore, that the government's unkept promise was the sole inducement for his plea of guilty. As the Supreme Court has stated, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be *part* of the inducement or consideration, such promise must be fulfilled."[15] Smith has adduced evidence making this showing.

Before the magistrate as well as the district court, Smith testified that both his attorney, Triche, and district attorney Talbot told him he would be released in ten years and six months if he pleaded guilty. He also asserted that the sentencing judge told him he would be released in ten years and six months if his record was good. The record supports his contention with regard to the State's promise and the promise of his lawyer, although there is nothing to support his allegation that the judge said anything.

It was the district court's province to weigh Smith's credibility and we affirm its rejection of his testimony as inherently lacking in credibility. As the court noted, Smith had asserted in an earlier petition that his guilty plea was involuntary because he was under the influence of drugs and was "in a drunken stupor" when he entered it and he therefore did not enter it voluntarily. Now he claims to remember the plea bargaining proceeding in great

9. *Dunn v. Maggio*, 712 F.2d 998, 1001–02 (5th Cir.1983), *cert. denied*, 456 U.S. 1031, 104 S.Ct. 1297, 79 L.Ed.2d 697 (1984).

10. *Hayes v. Maggio*, 699 F.2d 198, 203 (5th Cir. 1983) *citing Blackledge v. Allisson*, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977). *See also Bryan v. United States*, 492 F.2d 775, 778 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974); *Williams v. Estelle*, 681 F.2d 946, 948 (5th Cir.1982), *cert. denied*, — U.S. —, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984).

11. *Jones v. Estelle*, 584 F.2d 687, 689 (5th Cir. 1978).

12. 632 F.2d 649, 651 (5th Cir.1980) *citing Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970).

13. *Hayes, supra*, 699 F.2d at 203.

14. *United States v. Kerdachi*, 756 F.2d 349, 352 (5th Cir.1985).

15. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (emphasis added). *See also Acosta v. Turner*, 666 F.2d 949, 953 (5th Cir.1982; *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981); *United States v. Nuckols*, 606 F.2d 566, 570 (5th Cir.1979); *Jones v. Estelle*, 584 F.2d 687, 689 (5th Cir.1978); *United States v. Shanahan*, 574 F.2d 1228, 1230–31 (5th Cir.1978); *Vandenades v. United States*, 523 F.2d 1220, 1224 (5th Cir. 1975).

detail. Disregarding Smith's testimony, however, his contention was supported by the testimony of his attorney, Triche, and former District Attorney Talbot, as well as by the State's stipulation. The district court nonetheless ignored that stipulation, finding it immaterial after hearing former District Attorney Talbot's live testimony at the evidentiary hearing. Considering that testimony and the remainder of the record, we find it was error to reject the stipulation.

■ Stipulations entered into between parties are to be disregarded only if accepting them would be "manifestly unjust or if the evidence contrary to the stipulation was substantial." [16] An incorrect admission of error by the state does not bind the district court [17] and it has an independent duty to examine the record to ascertain the accuracy of the stipulation. [18] The determination must, however, be based on the record.

■ District Attorney Talbot could not remember speaking with Smith directly at all, and indicated that, although it was possible that Smith had overheard him speaking to Triche, it was his usual practice to speak only to a defendant's attorney and not to the defendant himself. However, when shown the stipulation, Talbot stated:

Those are not my words, necessarily, but generally that would be correct. I would certainly assume that if a man pled guilty to life, at that point in time that he was told that after ten, six, he can, his conduct being proper, would be released. *He was, indeed, led to believe that after receiving ten years in prison, that he would be released.* This is over Mr. Reeves' signature by me, and this is generally correct, yes, I would presume so. (emphasis added).

Smith's attorney, Triche, stated that, although he believed that Smith would serve only ten years and six months on a life sentence and would have communicated that fact to Smith if Smith had asked, he could not remember having any conversations relevant to sentencing with Smith, nor could he remember the district attorney or judge having any such conversations with Smith. However, he also stated:

[I]f he [Smith] had asked me, you know, How much time would I serve?—I would likely have told him You are going to serve 10 years and 6 months, because you are going to be eligible for parole after 10 years and 6 months. And everybody who serves on good behavior gets paroled.

In this case, the testimony of Triche and Talbot supports the stipulation. Moreover, there is no evidence contrary to it. Thus the proof of the promises made to Smith in this case is not merely an explanation of parole proceedings by a defendant's lawyer,[19] or a petitioner's unsubstantiated assertions. Rather, the petitioner has shown that a promise was made to him and was not kept, clearly comporting with the standard of proof required by our prior decisions.[20] Finally, Smith has clearly kept his end of the bargain—he has served time with good behavior according to the pardon board, which has recommended his release. In view of this, accepting the stipulation leads to no unjust result.

■ Because Smith has a constitutional right to hold the State to the terms it agreed upon with him as consideration for his plea, and he has demonstrated his right to relief, we REMAND the case to the district court to GRANT the writ of habeas corpus.

**16.** *Loftin and Woodward, Inc. v. United States,* 577 F.2d 1206, 1232 (5th Cir.1978).

**17.** *Every v. Blackburn,* 781 F.2d 1138, 1140 (5th Cir.1986), *citing Young v. United States,* 315 U.S. 257, 258–59, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1942).

**18.** *Sibron v. State of New York,* 392 U.S. 40, 58, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968).

**19.** *Cf. Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir.1985); *Garrett v. Maggio,* 685 F.2d 158, 160 (5th Cir.1982), *cert. denied,* 459 U.S. 1114, 103 S.Ct. 747, 74 L.Ed.2d 966 (1983).

**20.** *See, supra,* notes 10–15 and accompanying text.