Lawrence JASPER

v.

**Frank BLACKBURN, Warden and Attorney General of the State of Louisiana.**

Civ. A. No. 87–811.

United States District Court,
E.D. Louisiana.

June 13, 1988.

R. James Kellogg, New Orleans, La., for petitioner.

John J. Mamoulides, Dorothy A. Pendergast, John J. Molaison, Jr., Gretna, La., for respondents.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are petitioner's objections to the Magistrate's Findings and Recommendation. The Magistrate's Findings and Recommendation are ADOPTED. The Court writes merely to address the petitioner's objections.

Petitioner, Lawrence Jasper, is a prisoner in the Louisiana state prison facility at Angola, Louisiana. On March 9, 1970, Jasper pled guilty to two counts of aggrevated rape. The Louisiana trial court sentenced him to two life sentences, to run concurrently. Eight years later, on May 22, 1978, Jasper brought his first petition for federal habeas corpus. In that proceeding, Jasper contended that his 1970 guilty plea was not voluntarily and knowingly entered into. Specifically, Jasper claimed that his trial attorney had informed him that, under prevailing Louisiana law, a life sentence amounted to service of ten and one half years and that he would be eligible for parole after serving less than four years in prison. Jasper's 1978 habeas petition was dismissed, the Court finding no sufficient evidence to support Jasper's claims of his erroneous belief as to his release date.

In his present habeas petition, Jasper contends that the State of Louisiana has breached the terms of the plea bargain under which he agreed to plead guilty. He now claims to have been promised that he would be eligible for parole and, in fact, actually paroled, after serving ten years and six months in prison with good behavior. Over the state's objection, the Magistrate held that Jasper's present petition was not successive under Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts. The State has not appealed that holding.

The Magistrate held that Jasper's guilty plea was voluntary in nature and, accordingly, that there is no basis for habeas relief. That is, the Magistrate found that

the plea was not the result of any promise made to Jasper regarding the commutation of his sentence. In support of her holding, the Magistrate cites testimony of both Jasper's trial attorney and the purported eyewitness of the plea negotiations. In his objections, Jasper asserts that the Magistrate mischaracterized the testimony of these two witnesses. Jasper also contends that the Magistrate erred in her application of governing Fifth Circuit case law and in her refusal to take judicial notice of the practice of sentence commutation prevelant at the time that Jasper's guilty plea was entered. The Court finds that the Magistrate's Findings and Recommendation are correct in result.

In two recent cases, the Fifth Circuit has established the standard of review in habeas actions resulting from allegedly impermissible sentencing promises. *See Smith v. Blackburn*, 785 F.2d 545 (5th Cir.1986); *Dunn v. Maggio*, 712 F.2d 998 (5th Cir. 1983) (per curiam). In *Smith*, the court stated that in order to succeed on his habeas claims, a petitioner must show:

> "1) the exact terms of the alleged promise; 2) exactly when, where, and by whom such a promise was made; and 3) the precise identity of an eyewitness to the promise."

785 F.2d at 548. In that case, both the petitioner's trial attorney and the prosecuting district attorney testified that the petitioner had been told that he would be released in ten and one-half years if he pleaded guilty to non-capital murder.[1] There was, in fact, a promise.[2] The *Smith* court held:

> "[T]he proof of the promises made to Smith in this case is not merely an explanation of parole proceedings by a defend-

ant's lawyer, or a petitioner's unsubstantiated assertions. Rather, the petitioner has shown that a promise was made to him and was not kept, clearly comporting with the standard of proof required by our prior decisions."

*Id.* at 549.

In *Dunn*, on the other hand, the Fifth Circuit held that the petitioner failed to prove the existence of a promise. The *Dunn* court relied upon testimony received during state habeas proceedings. In its ruling on Dunn's state habeas petition, the Louisiana Supreme Court had found that: "[Dunn] understood that commutation of his sentence was not guaranteed, but that it was more probable than not if he maintained good behavior." 712 F.2d at 999. The state court's conclusion was supported by the testimony of the state trial judge during the federal habeas proceedings to the effect that the petitioner was made no guarantee of commutation after ten years and six months of good behavior. *Id.* at 1001.

█ In this case, as in *Dunn*, the evidence indicates that, while the petitioner was informed of the strong possibility of commutation after ten years and six months of imprisonment with good behavior, he was not promised release under those terms. The petitioner points to nothing in the testimony of Ralph Barnett, his trial attorney's testimony, which can be said to support the existence of a promise. While the attorney did testify that the practice in Louisiana at the time of the plea agreement was that prisoners serving life sentences were generally released after ten and one half years because of the commutation of their sentence, nothing in the attorney's testimony indicates that a promise

---

1. The district attorney stated that the *Smith* petitioner "was, indeed, led to believe that after receiving ten years in prison, that he would be released." 785 F.2d at 549. Additionally, Smith's trial attorney testified that:

> "[I]f he [Smith] had asked me, you know, How much time would I serve?—I would have likely told him You are going to serve 10 years and six months, because you are going to be eligible for parole after 10 years and 6

months. And everybody who serves on good behavior gets paroled."
*Id.*

2. In *Smith*, the State went so far as to enter into a stipulation, conceding that the petitioner had been led to believe that he would be released in ten and one half years with good behavior. The court noted that the State apparently did not contend that the writ should not have issued.

was made.[3] Petitioner also points to the testimony of his alleged eyewitness, Edwin DeMerritt. Once again, this testimony does not reflect proof of a promise of commutation. By petitioner's own admission, DeMerritt testified only that he understood that there was a high probability that Jasper would be released after ten and one half years.[4]

Finally, while Jasper, himself, testified that his attorney promised him that he would be released in no more than ten and one half years, Jasper's testimony is inconsistent. Jasper has indicated in the past that it was his understanding that he could be released in only three and one half years if he displayed good behavior. In any event, Jasper's testimony alone is not sufficient to prove the existence of a promise under the *Smith* standards. After a close review of the transcript of the Magistrate's evidentiary hearing, the Court finds nothing to support Jasper's assertion that his plea of guilty was the result of a subsequently unfulfilled promise of commutation.[5]

■ Petitioner also contends that the promise of commutation after ten and one half years of good behavior was implicitly contained in Louisiana Revised Statute 15:571.7, which was in force at the time of the guilty plea but was subsequently revised.[6] While the statute hardly speaks in terms that amount to a guarantee of commutation, even if such a guarantee could be read into the language, it cannot serve as a basis for Jasper's petition. Because there is no implied warranty that a state will not change its laws, a prisoner has no constitutional right to early parole or pardon based upon state law in effect at the time of his guilty plea. *Smith, supra,* 785 F.2d at 548. The existence of Section 15:571.7 at the time of the guilty plea was, by itself, simply not enough to constitute a binding promise of commutation after ten and one half years of good behavior.

Finally, Jasper contends that the Magistrate erred in failing to take judicial notice of the practice of commutation in effect at the time of the 1970 guilty plea. Without addressing the propriety of judicial notice of these circumstances, the Court notes that nothing in these practices tends to prove the existence of a promise of commutation. *Smith* and *Dunn* clearly teach that a petitioner's mere understanding of the likelihood of the commutation of his sentence after ten years and six months of

---

3. In fact, at the Magistrate's evidentiary hearing in response to an inquiry into whether Barnett promised Jasper that he would be released, Barnett responded adamantly:

> "I am positive that I would not have said that. I am positive that I would have told him ... that after 10, six, generally and customarily, if there is good behavior, that you can apply for commutation or a parole, and at that time it was granted."

Later, in response to the question of whether he would have told Jasper unconditionally that he would be released in ten years and six months, Barnett stated: "No, I would never have told that to anyone."

4. The transcript of the Magistrate's evidentiary hearing shows and the Magistrate found that DeMerritt was aware that Jasper might serve more than ten and one half years in prison and that DeMerritt did not hear all of the conversations between Jasper and his attorney prior to the guilty plea.

5. Petitioner also claims that the Magistrate erred in interpreting *Smith* as requiring that the prosecutor, himself, convey a promise of commutation. This interpretation is inconsistent with the *Smith* opinion. The *Smith* court stated: "[W]hen a defendant pleads guilty on the basis of a promise *by his defense attorney or the prosecutor* ... breach of that promise taints the voluntariness of his plea." 785 F.2d at 548 (quoting *McKenzie v. Wainwright,* 632 F.2d 649, 651 (5th Cir.1980)) (emphasis added). This error, however, is harmless in light of the total absence of any promise made to the petitioner.

6. Former Section 15:571.7, provided, in part:

> "Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary he may apply for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor may commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had or any two of them. No commutation under this Section shall reduce the period of incarceration to less than ten years and six months."

La.Rev.Stat.Ann. 15:571.7 (deleted).

imprisonment with good behavior simply does not equate with a promise that the prisoner will, in fact, be released. The existence of a particular practice in Louisiana is not evidence of a binding promise made to Jasper.

Accordingly, for the foregoing reasons, petitioner's objections to the Magistrate's Findings and Recommendation are dismissed, and the Findings and Recommendation are ADOPTED.