Karon M. MARZEC, Appellant,

v.

John O. MARSH, Jr., Secretary
of the Army, Appellee.

No. 92–2151.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1992.

Decided April 2, 1993.

Michael J. Hoare, St. Louis, MO, argued
for appellant.

Walter H. Ohar, St. Louis, MO, argued (Stephen B. Higgins, and Wesley D. Wedemeyer, on the brief), for appellee.

Before JOHN R. GIBSON, WOLLMAN, Circuit Judges, and STROM,* District Judge.

STROM, District Judge.

On October 16, 1987, Karon M. Marzec, a female employee of the United States Army corps of Engineers (the "Corps"), filed suit alleging she was intentionally denied a promotion on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 241 (codified as amended at 42 U.S.C. §§ 2000e et seq. (1981 & Supp. I 1992)). On December 2, 1988, she amended her complaint to add a claim of unlawful retaliation under Title VII. The case was tried to the court[1] on November 15–16, 1989. On April 13, 1992, the trial court entered judgment against Marzec. Marzec appeals this judgment. We affirm.

### I.

Marzec was employed by the Corps as a realty specialist, grade level GS–11, in the Management and Disposal branch of the Real Estate Division in the St. Louis district. In December, 1986, the position of Chief of the Management and Disposal ("M & D") branch, a grade level GS–12, came open. Woodrow B. Sandlin, head of the Real Estate Division in the St. Louis district, thereafter undertook to fill the position. Generally, a supervisor may fill a position with no promotion potential, such as Chief of M & D, in one of three ways: 1) using merit competition among employees at all grade levels; 2) laterally transferring another employee at the same grade level; or 3) hiring from the outside. In late December, Sandlin discussed with Katherine Greer, Chief of the Recruitment and Placement branch of the Personnel Office, his proposal to transfer R.C. Franco to the position. At that time, Franco was the

director of the Meramec Disposal Project, a specially-created section of the M & D branch. He was a realty specialist at grade level GS–12, the same grade level as the vacant position, and thus his reassignment to that position was considered a lateral transfer. In January, 1987, Marzec informed Sandlin she was interested in the position. Sandlin subsequently awarded the position to R.C. Franco. Because Sandlin chose to fill the position with a lateral transfer, rather than through merit competition, he did not consider Marzec or any other employee at the GS–11 grade level for the position.

At the time Sandlin made the decision to transfer Franco to the Chief of M & D position, he was unaware of the existence of a so called "stopper" candidate. Pursuant to the Department of Defense's Priority Placement Program, any job vacancies first had to be offered to qualified employees who were returning from overseas assignments and did not have jobs in the United States or who were being displaced because of a reduction in force. However, the "stopper" candidate did not have to be given priority with respect to a job vacancy that was to be filled by a lateral transfer of an employee from a position at the same grade level and in the same job series. In that event, the "stopper" candidate would be given priority only as to the position that was vacated by the laterally transferred employee. On approximately December 15, 1986, the Recruitment and Placement office received a "stopper" list containing the position of a realty specialist grade GS–12. The person occupying that position was Betty Mentzel, who was then working in Korea. As required by the Priority Placement Program, the grade GS–12 position vacated by Franco was first offered to Mentzel, and she accepted it.

Marzec protested Sandlin's selection of Franco for the Chief of M & D position and told him that she intended to pursue an "EEO" complaint. She also complained to

---

* The Honorable Lyle E. Strom, Chief Judge, District of Nebraska, sitting by designation.

**1.** United States District Judge Carol E. Jackson, Eastern District of Missouri, Eastern Division,

then a Magistrate Judge presiding by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

two of Sandlin's superiors and to the Corps' chief equal employment opportunity counselor. On May 29, 1987, Marzec filed an informal complaint with the EEO office of the Corps.

On approximately January 20, 1987, Franco assumed the position of Chief of M & D, thereby becoming Marzec's immediate supervisor. In order to devote more time to learning his new job, Franco directed the secretary of the M & D branch to make case assignments to the employees. Marzec received projects from the secretary until roughly the fall of 1987, when Franco began assigning them. Marzec alleges she received fewer and less important assignments during this period. In March, 1987, Marzec prepared letters of recommendation for employees who assisted her on a special project and submitted them to Colonel James Brown, the Corps' deputy district engineer, for his signature. Sandlin informed Marzec that she improperly circumvented the chain of command by not showing the letters to him before submitting them to Colonel Brown. In addition, Franco wrote her a memorandum regarding the proper chain of command. In June, 1987, Marzec underwent an annual Career Program appraisal. The Career Program is a nationwide merit competition required for promotion or placement in a position that has promotion potential. Sandlin downgraded Marzec's ratings from the previous year in 8 of 54 categories. However, Marzec received an overall rating of "highly successful/exceeds fully successful." Sandlin had similarly downgraded Franco and two other male employees in 1986 after reviewing their career appraisals. In November, 1987, and again in 1988, Franco reassigned two cases to other employees because he received complaints from citizens about Marzec's handling of the cases.

## II.

Marzec first argues that the trial court erred in rejecting her claim that she was not promoted to the Chief of M & D position because of her sex in violation of Title VII. Marzec brought this claim under a disparate treatment theory. Under this theory, proof of discriminatory intent is necessary. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Discriminatory intent may be shown by direct or circumstantial evidence. *Aikens*, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3. Because direct evidence of discriminatory intent is rare, the Courts have developed a tripartite allocation of burdens and order of presentation of proof in Title VII cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

Under this framework, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. If the plaintiff proves a *prima facie* case, she has succeeded in creating a rebuttable presumption of unlawful discrimination. *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1481; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *see McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824–25. At this point, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment action. *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1481; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If the defendant carries its burden, the presumption of unlawful discrimination drops from the case and plaintiff is then required to prove by a preponderance of the evidence that the defendant's proffered reason is unworthy of credence and is merely a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *see Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482. At all times, the ultimate burden of proving discriminatory intent rests with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

To establish a *prima facie* case of discrimination in a failure-to-promote case, the plaintiff must establish (1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her

qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied. *See Bell v. Bolger*, 708 F.2d 1312, 1316 (8th Cir.1983) (citing *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981)); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ The trial court found that plaintiff failed to establish a *prima facie* case of unlawful discrimination under Title VII. It found that Marzec was not qualified for the Chief of M & D position because of her grade level. The trial court held that Marzec's GS–11 grade level precluded her from the position in light of Mentzel's status as a "stopper" candidate with first right to the position over all others except a lateral transfer in the same GS–12 grade level and job series. The trial court concluded that it was immaterial Sandlin was not aware of the "stopper" candidate at the time he selected Franco for the position; that regardless of Sandlin's motives or intent, the plaintiff was not qualified for the job due to her grade level, and Sandlin could not have assigned her to the job in any case.

Marzec claims the trial court misapplied the law in finding no *prima facie* case of discrimination. Specifically, Marzec argues the trial court erred in not examining Sandlin's motive in excluding her from consideration for the subject position prior to his discovery of the "stopper" candidate. If he were motivated by her sex, Marzec argues, then she was subject to unlawful discrimination, regardless of whether later it became apparent she was ineligible for the position, and therefore would be entitled to a judgment and nominal damages and attorney fees.

We review the trial court's findings for clear error. *Parton v. GTE North, Inc.*, 971 F.2d 150, 154 (8th Cir.1992); *Pullman–Standard, Div. of Pullman, Inc. v. Swint*, 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982). The evidence clearly supports the trial court's finding that Marzec was unqualified for the position of Chief of M & D because of her GS–11 grade level. In light of Mentzel's status as a "stopper" candidate, Marzec could have qualified for the position only if she had been a grade GS–12. As a "stopper" candidate, Mentzel was entitled to priority with respect to the Chief of M & D position. One of the few exceptions to this priority was the appointment of a lateral transfer to the position, as in the case of Franco, which would result in a vacancy at the same grade level and in the same job series. Since Marzec was unqualified for the position she sought, the trial court correctly found that she failed to establish a *prima facie* case of intentional discrimination. In doing so, the trial court properly disregarded Sandlin's motive in excluding her from consideration for the position. His intent was immaterial because he simply had no power either to grant or deny Marzec a promotion. Any promotion of Marzec was foreclosed by the rules governing the Priority Placement Program. As is clear from the record, the Corps' personnel department was aware of this fact and would have prevented any attempt by Sandlin to promote her.

### III.

■ Marzec also argues that the trial court erred in finding plaintiff failed to establish a *prima facie* case of retaliation in violation of Title VII. To establish a *prima facie* case of unlawful retaliation, plaintiff must establish that 1) she complained of discrimination; 2) defendant took adverse action against her; and 3) the adverse action was causally linked to the complaint of discrimination. *Martin v. Local 1513 & District 118 of International Ass'n of Machinists & Aerospace Workers*, 859 F.2d 581, 585 (8th Cir.1988); *Kellner v. General Refractories Co.*, 631 F.Supp. 939, 944 (N.D.Ind.1986). The trial court found that the evidence failed to support a causal link between Marzec's complaint of discrimination and the alleged adverse actions taken against her by Franco and Sandlin. Respecting Marzec's claim that she received fewer and less important assignments from Franco between February and autumn, 1987, the trial court found that Franco directed the M & D branch

secretary to make the case assignments during this period and Marzec.received projects from her. The trial court further found that Franco was not even aware Marzec was taking any action in furtherance of her sex discrimination claim during the alleged period of retaliation, and that, in any event, he articulated legitimate reasons for his actions respecting her. The trial court also found that Sandlin articulated legitimate reasons for his actions respecting her. After careful review of the record, we cannot say that these findings are clearly erroneous. *See Martin*, 859 F.2d at 585. As such, the trial court correctly found no *prima facie* case of retaliation.

We affirm the judgment of the district court.