66 F.3d 1471
 69 Fair Empl.Prac.Cas. (BNA) 1348, 33
Fed.R.Serv.3d 604
Annette WINBUSH; Marie Clark; Plaintiffs-Appellees,
Harley Cooper; Rita Williams; Beverly Davis; Lisa Sue
Voyd; Helen Floyd; Terrance Jordan; Nora
Duncan; Intervenor-Plaintiffs-Appellees,
Frances Carson; Intervenor-Plaintiff,
Elzie Pittman; Intervenor-Plaintiff-Appellee,
Carolyn McBride; Charles Duncan; Billie J. Harmon; Edwin
Lee Rollins; Roberta J. Hubbard; Rose Perry; Ricardo
Hunt; Charles Floyd; Estate of Patricia Perry; Wendell
Winbush; Maricarol Martin; Intervenor-Plaintiffs,
Donita Duncan, Intervenor-Plaintiff-Appellee,
v.
STATE OF IOWA, by GLENWOOD STATE HOSPITAL; William
Campbell; Rich Bowman; Max Moore; Richard
Crawford; Defendants-Appellants.
 No. 94-3731.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1995.
Decided Oct. 4, 1995.
Rehearing Denied Nov. 13, 1995.
 
 Gordon Eugene Allen, Des Moines, Iowa, argued (Thomas J. Miller, Attorney General of Iowa, on the brief), for the appellants.
 Christopher J. Tinley, Council Bluffs, Iowa, argued (Alfonza Whitaker, on the brief) for the appellees.
 Before LOKEN and LAY, Circuit Judges, and VAN SICKLE,* District Judge.
 LAY, Circuit Judge.
 
 I.
 
 1
 Glenwood State Hospital School (Glenwood) and certain officials of the school,[1] appeal the district court's[2] judgment awarding monetary damages to eleven African-Americans under 42 U.S.C. Secs. 1981, 1983, and 2000e (Title VII) due to racial discrimination in their employment at Glenwood. Defendants challenge the court's jurisdiction to award relief under Sec. 1981 and Title VII, the intervention by a number of plaintiffs, the sufficiency of the plaintiffs' evidence to sustain a prima facie case of discrimination, and the award of prejudgment interest. We affirm in part and remand in part with instructions.
 
 II.
 BACKGROUND
 
 2
 On April 23, 1982, Annette Winbush and Marie Clark filed a class action suit in the federal district court of Nebraska alleging racial discrimination in employment by Glenwood. Attached to their complaint were copies of right-to-sue letters they had received from the Equal Employment Opportunity Commission (EEOC). They sought relief under 42 U.S.C. Secs. 1981, 1983, 1985, and 2000e (Title VII), and the Thirteenth Amendment. In August 1982, Donita Duncan moved to intervene, attaching to her motion her complaint to the Iowa Civil Rights Commission. Junior Floyd moved to intervene in January 1983.
 
 
 3
 The case was transferred to the Southern District of Iowa. The district court granted Donita Duncan's motion to intervene but denied Junior Floyd's on the basis that he failed to exhaust his administrative remedies. The complaint was amended to add named defendants from Glenwood. In 1986, the district court conditionally certified the class of African-American plaintiffs.
 
 
 4
 The bench trial began in 1987, continued intermittently, and concluded in 1988. In February 1990, the district court issued its Findings of Fact, Conclusions of Law and Order. Winbush v. State of Iowa, No. 82-58-W (S.D.Iowa Feb. 26, 1990) ("The 1990 Order "). The court decertified the class,[3] and rejected liability as to twelve individuals because they had voluntarily resigned or were terminated for cause. The court found, however, that Glenwood had discriminated against a number of African-American plaintiffs through wrongful termination, wrongful failure to promote, and a hostile racial work environment. The court found the defendants liable to Annette Winbush, Marie Clark, Donita Duncan, and fifteen other individuals (now plaintiffs) under Title VII, Sec. 1981,[4] and Sec. 1983 under both disparate treatment and disparate impact analysis. The court also granted twelve other individuals who had not testified at trial the opportunity to present additional evidence in support of their claims of liability and damages. The court denied injunctive relief.[5] Damages were to be determined at a later hearing.
 
 
 5
 The plaintiffs then filed a motion to reconsider the class decertification. In January 1992, while the motion to reconsider was pending, twenty-six individuals named in The 1990 Order moved to intervene in the litigation. In August 1992, the court issued an order affirming decertification of the class but granting twenty-one individuals leave to intervene, including six who had not testified at trial. The court rejected intervention by five individuals who had not testified at trial and who did not appear to have meritorious claims. See Winbush v. State of Iowa, No. 82-58-W, at 4 (S.D.Iowa Aug. 25, 1992) ("The 1992 Order ").
 
 
 6
 In January 1993, the court held hearings to determine the defendants' liability to five intervenors who had not testified at trial and heard evidence on damages for seventeen plaintiffs. In December 1993, the court awarded damages to eleven individuals, plus prejudgment interest, totaling over $860,000, but rejected damages for ten plaintiffs whose claims the court determined were time barred. Winbush v. State of Iowa, No. 1-82-CV-50058 (S.D.Iowa Dec. 17, 1993) (memorandum opinion and order) ("The 1993 Order "). The court also rejected plaintiffs' claim for punitive damages. In September 1994, the court awarded over $200,000 in attorney's fees.
 
 III.
 PROCEDURAL ISSUES
 A. Jurisdiction under Secs. 1981 and 1983[6]
 
 7
 The plaintiffs' complaint alleged a claim under 42 U.S.C. Sec. 1981 and the district court granted relief under that act as well as under Title VII. The defendants, however, argue that claims of harassment and unfair treatment are not actionable under Sec. 1981. Section 1981 forbids "discrimination in the 'mak[ing] and enforce[ment]' of contracts alone.... Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." Patterson v. McLean Credit Union, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989) (alterations in original) (quoting Sec. 1981).[7] In Taggart v. Jefferson County Child Support Enforcement Unit, 935 F.2d 947, 948 (8th Cir.1991) (en banc), this Circuit held that "Patterson bars discriminatory discharge claims under section 1981." As to denials of promotion,
 
 
 8
 the question whether a promotion claim is actionable under Sec. 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under Sec. 1981.
 
 
 9
 Patterson, 491 U.S. at 185, 109 S.Ct. at 2377. Under Patterson, we find the district court erred in granting relief on wrongful termination and hostile working environment claims under Sec. 1981. We also find that, although the wrongful failure-to-promote claims present a closer question under Sec. 1981, we do not need to decide whether these claims generally fall within the purview of Sec. 1981 because the plaintiffs (with one exception) may recover just as fully under Title VII.[8] We address below the Sec. 1981 claim of the one plaintiff (Harley Cooper) whose Title VII failure-to-promote claim is procedurally limited.
 
 B. Jurisdiction under Title VII
 
 10
 Relying on Hinton v. CPC Int'l, Inc., 520 F.2d 1312 (8th Cir.1975), the defendants urge that none of the plaintiffs have fulfilled the jurisdictional prerequisites contained in Title VII. Hinton held that a plaintiff must file a discrimination charge with the EEOC, obtain a right-to-sue letter from the EEOC, and institute litigation within the ninety-day right-to-sue period in order to give federal courts jurisdiction over the lawsuit. Id. at 1314-15. The defendants point out that Annette Winbush's and Marie Clark's EEOC right-to-sue letters were attached to the complaint, but were never offered at trial, that Harley Cooper's EEOC filing was the only one offered at trial but he failed to subsequently file a lawsuit on his own and is now an intervenor, and that no other intervenor made an EEOC filing.
 
 
 11
 We note first that Hinton has since been overruled sub silentio to the extent that it held the ninety-day filing requirement was jurisdictional. In Hill v. John Chezik Imports, 869 F.2d 1122 (8th Cir.1989), a panel of this Circuit held that the ninety-day period was not jurisdictional and thus is "subject to equitable tolling in appropriate circumstances." Id. at 1124 (relying on Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Equitable tolling is available when the plaintiff fails to file a timely lawsuit due to the plaintiff's "excusable neglect." Anderson v. Unisys Corp., 47 F.3d 302, 306 (8th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 299, --- L.Ed.2d ---- (1995). The plaintiffs, however, do not rely on equitable tolling to maintain their action under Title VII, and thus we do not discuss this issue here.
 
 
 12
 Instead, plaintiffs rely on the filings made by Annette Winbush and Marie Clark and the "single filing" rule as the basis for intervention by the other plaintiffs. We agree that the court properly heard the Title VII claims of Annette Winbush and Marie Clark despite their failure to introduce the right-to-sue letters at trial. In Hinton, we indicated that substantial compliance with the filing requirements of 42 U.S.C. Sec. 2000e-5(f)(1), such as making "some effort to initiate [an] action in the district court within the filing period, such as filing the right-to-sue letter as a pleading," could excuse strict compliance with Title VII's procedural requirements. 520 F.2d at 1315. Here, Annette Winbush and Marie Clark did more than simply file their right-to-sue letters with the court--they actually sued Glenwood within ninety days in full compliance with 42 U.S.C. Sec. 2000e-5(f)(1).[9] We thus find the district court had jurisdiction over the Title VII claims of Annette Winbush and Marie Clark.[10]
 
 
 13
 The defendants also argue that the district court should have imposed Title VII's procedural requirements against the intervening plaintiffs who had not filed charges with the EEOC, thus barring their claims. We disagree. The district court, relying on Foster v. Gueory, 655 F.2d 1319, 1323 (D.C.Cir.1981), and Behlar v. Smith, 719 F.2d 950, 953 (8th Cir.1983) (per curiam), cert. denied, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 552 (1984), found a "similar and sufficient factual basis" between the intervenors and the original plaintiffs to allow the intervenors to avoid the requirement of exhaustion of administrative remedies. The 1992 Order, at 6. In Foster, the court held that once a single plaintiff has filed an EEOC complaint, other non-filing plaintiffs may join in the action if they allege facts showing that they were similarly situated and that their claims arose out of similar discriminatory treatment. 655 F.2d at 1322-23. The purpose of the filing requirements is to enable conciliation by the EEOC and to protect defendants from surprise. Behlar, 719 F.2d at 953. In this case, the EEOC filings that were made put the defendants on notice of allegations that they discriminated against their African-American employees, and the district court did not abuse its discretion in finding that no conciliatory purpose would have been served by requiring separate filings. We hold that the district court properly allowed intervention without requiring a separate EEOC filing by each intervenor.[11]
 
 C. Intervention
 
 14
 Defendants also challenge the intervention by eight of the successful plaintiffs in 1992 as untimely and prejudicial. We review the district court's granting of intervention for an abuse of discretion. NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). Fed.R.Civ.P. 24(b), governing permissive intervention, requires that potential intervenors make a "timely application" for intervention and that their claims involve common questions of law or fact as the underlying action. The court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b).
 
 
 15
 The defendants argue that the 1992 intervention was untimely and prejudicial because it occurred long after the filing of the complaint (1982), the conditional certification of the class (1986), the conclusion of the bench trial (1988), and the court's decision on the merits and decertification of the class (1990).
 
 
 16
 The timeliness of a motion to intervene is determined from the totality of the circumstances. NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). In particular, courts consider the status of the proceedings at the time of the motion, prejudice others may suffer as a result of the delay, and the reason for the delay. Arkansas Elec. Energy Consumers v. Middle South Energy, Inc., 772 F.2d 401, 403 (8th Cir.1985). Here, the status of the proceedings was such that the defendants were aware of the intervenors, who were members of the class action. In addition, many of the intervenors had been deposed by the defendants and were subject to cross-examination when they testified at trial on behalf of the class. The court decertified the class and allowed intervention at a time in the proceedings when the defendants incurred minimal prejudice.[12] Had the defendants wished to settle with any of them, they were free to do so. The plaintiffs moved for reconsideration of the decertification decision immediately following that decision, and intervention was requested before the court rejected the motion for reconsideration. Under these circumstances, we affirm the court's decision to permit intervention.
 
 IV.
 LIABILITY UNDER TITLE VII
 
 17
 Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a), makes discrimination by an employer in hiring decisions or in the terms and conditions of employment against an individual because of that individual's race an unlawful employment practice. The district court found plaintiffs suffered different treatment because of their race and that the defendants intentionally discriminated against them in violation of Title VII. The court also found the defendants' practice of using acting supervisors in lieu of the state's merit system for promotions violated Title VII's proscription against employment practices which, while facially neutral, discriminate against minorities. Thus, the court found the plaintiffs prevailed on both disparate treatment and disparate impact theories of discrimination.
 
 
 18
 Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), a plaintiff must first establish a prima facie case of intentional discrimination by a preponderance of the evidence. Relying on Marzec v. Marsh, 990 F.2d 393 (8th Cir.1993), the defendants argue that certain plaintiffs claiming denial of promotion failed to prove that they applied for any vacant position, or that they were formally certified by the Iowa Department of Personnel (IDOP) for any vacant position, or that they were denied a specific promotion.[13] The defendants' argument, however, misses the point that " '[t]he elements of a prima facie case vary with the circumstances of the alleged discrimination.' " Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir.1994) (alteration in original) (quoting Jones v. Frank, 973 F.2d 673, 676 (8th Cir.1992)). Moreover, once the district court determines a case has been made and the trial continues, the central question for our review is not whether the court erred in finding a prima facie case, but whether there was sufficient evidence to decide whether the defendants intentionally discriminated against the plaintiffs. See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-15, 103 S.Ct. 1478, 1480-82, 75 L.Ed.2d 403 (1983).
 
 
 19
 The district court found the plaintiffs made a prima facie case of employment discrimination by "establishing that they are members of a protected class [African-Americans], and that the defendants have failed to promote [African-Americans] to higher positions, while the defendants did promote [caucasians] on a regular basis." The 1990 Order, at 54. We find the evidence from which the district court derived its conclusion that specific plaintiffs were given disparate treatment in advancement at Glenwood is overwhelming.
 
 
 20
 First, the district court found that the defendants used "discretionary promotion policies [that] discouraged promotional opportunities for [the plaintiffs] and reflected systematic and purposeful discriminatory treatment of them based on their race." Id. at 59 (footnote omitted). The court found that the defendants used a system of acting supervisors[14] and "med-givers"[15] as pre-selection devices for promoting caucasian employees. Supervisors used these pre-selection devices to fill open positions with friends and other favored individuals in contravention of the state's merit system. Indeed, the court found that "Glenwood ignored, to a great degree, the merit system when it came to [African-American] employees." The 1993 Order, at 28-29. Consequently, the court excused the plaintiffs from fulfilling several elements of the typical prima facie case.
 
 
 21
 In addition to Glenwood's discretionary promotion policies, the court considered evidence which showed a hostile racial working environment that excused several elements of the typical prima facie case for failure-to-promote. Beverly Davis, Roberta Hubbard, Elzie Pittman, Charles Duncan, Donita Duncan, and L.Z. McBride testified that supervisors at Glenwood overlooked rule violations by caucasians but disciplined similar transgressions by African-American employees. Elzie Pittman, Charles Duncan, and Annette Winbush testified that African-American employees were disproportionately assigned more menial and demanding tasks. Frances Carson, Rita Williams, Roberta Hubbard, Lee Rollins, Marie Clark, Judith Anglen, and Terrance Jordan testified to hearing racial slurs by caucasian supervisors or to observing African-American residents receive degrading treatment from caucasian employees. Further, several witnesses testified as to racially derogatory statements by defendant Richard Crawford to other caucasian supervisors.
 
 
 22
 Despite this evidence of discriminatory practices and hostile work environment, the defendants argue the plaintiffs should have identified particular positions for which they applied. It is well settled, however, that plaintiffs need not prove they formally applied for a position if they allege facts which, if proven, would be sufficient to establish that application was futile due to the defendants' discriminatory practices. As the Supreme Court observed in International Bhd. of Teamsters v. United States, 431 U.S. 324, 365, 97 S.Ct. 1843, 1869-70, 52 L.Ed.2d 396 (1977):
 
 
 23
 [A policy of discrimination] can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices--by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups.
 
 
 24
 See also Holsey v. Armour & Co., 743 F.2d 199, 208-09 (4th Cir.1984) (mere expression of interest in promotion sufficient when employer discourages African-Americans from applying), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir.1984) (specific application not necessary where defendant had "no formal procedures for posting notice of available promotions"); Gifford v. Atchison, Topeka & Santa Fe Ry., 685 F.2d 1149, 1154 (9th Cir.1982) (employer's prior refusal to hire women for job excuses application); Paxton v. Union Nat'l Bank, 688 F.2d 552, 568 (8th Cir.1982) (employee's prima facie case not defeated by lack of formal application for promotion), cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); Royal v. Missouri Highway & Transp. Comm., 655 F.2d 159, 163 n. 5 (8th Cir.1981) (nonapplication for foreman position not fatal to prima facie case). In addressing defendants' argument, the district court stated it was "aware that many of these plaintiffs did not apply for promotions. However, the court has already found that the reason for not applying was either that they did not know how or when to apply or that they were led to believe that applying would do no good." The 1993 Order, at 27-28. Based on the record, we do not think that this finding is clearly erroneous.
 
 
 25
 Likewise, the defendants' discriminatory practices and the hostile working environment they created appropriately excuse the plaintiffs from the need to obtain formal IDOP certification. The defendants argue that IDOP certification process is the only method by which the plaintiffs could demonstrate they were qualified for supervisory positions. IDOP certification involves scoring applicants based on education, experience, and (for certain supervisory positions) test scores based on a written examination. Without IDOP certification, the defendants claim that they could not have promoted the plaintiffs. The defendants did not, however, introduce any evidence that IDOP testing and certification was necessary or effective in identifying and excluding unqualified candidates.[16] All prevailing plaintiffs met the experience and educational requirements for the positions to which the district court assumed they should have been promoted. In addition, the defendants attacked each plaintiff's qualifications by introducing every negative statement in their personnel files, and largely on this type of evidence, the court denied the claims of many plaintiffs. Under these facts, we think the district court adequately evaluated the individual qualifications of each plaintiff and appropriately excused the plaintiffs from showing formal qualification through IDOP certification.
 
 
 26
 The defendants also argue that the plaintiffs did not identify any caucasian employees of similar qualifications who were promoted at the time when plaintiffs' requests for promotions were denied. This argument ignores that the record shows a number of caucasian employees of similar qualifications were promoted during the time periods involving this suit. Exhibit TTT gives dates on which certain employees were promoted to first-level supervisory positions from 1969 to 1987. Although this list is not complete, it shows that 43 promotions were given between 1979 and 1987, but none went to African-Americans. The number of available positions indicates that the promotions to first-level supervisory positions assumed by the district court were reasonable. It was also reasonable for the district court to assume that four of the plaintiffs who have worked at Glenwood for long periods of time would have been promoted to higher supervisory or administrative positions absent discrimination.[17] Given that the plaintiffs were excused from showing they applied for particular positions through the IDOP certification process, it would be illogical to require them to identify the particular persons who were promoted ahead of them. The defendants had an opportunity to prove that the caucasians who were promoted were highly qualified, but did not do so. In light of the district court's decisions on the other elements of the prima facie case, its decision to excuse this element did not cripple the defense and we do not find it clearly erroneous.[18]
 
 
 27
 Finally, the defendants dispute that plaintiffs made an adequate prima facie case of disparate treatment with respect to terminations. The elements of a prima facie case of wrongful termination based on disparate treatment are: (1) membership in a protected group; (2) qualification for a position; (3) termination; and (4) circumstances that raise an inference of wrongful discrimination. Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir.1994). Qualification is not at issue here because the plaintiffs (Donita Duncan, Lisa Voyd, and Rita Williams) who recovered damages for wrongful termination worked at entry-level jobs for which there were no educational, testing, or experience qualifications. Duncan and Williams were both fired and the court found that Voyd had been constructively terminated. On review of the record, we find no clear error as to finding liability to these plaintiffs on this basis.[19]
 
 V.
 PRE-JUDGMENT INTEREST
 
 28
 The defendants argue that the Eleventh Amendment bars the award of prejudgment interest against the state because Iowa has not authorized prejudgment interest awards, see Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974), nor does Title VII expressly authorize such awards against a state, see 42 U.S.C. Sec. 2000e-5(g)(1). In addition, the defendants argue the district court abused its discretion by awarding prejudgment interest due to the court's long delay in making a final judgment.
 
 
 29
 This Circuit has not yet considered whether prejudgment interest on damages is permissible in an award against a state under Title VII.[20] We are persuaded, however, that under Title VII courts have the power to award prejudgment interest against state defendants. Accord Pegues v. Mississippi State Employment Serv., 899 F.2d 1449, 1454 (5th Cir.1990).
 
 
 30
 It is clear that Congress has exercised its power under the Fourteenth Amendment to abrogate broadly states' Eleventh Amendment immunity to suits under Title VII. See Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (holding that Congress authorized suits and awards of damages and attorney's fees against state employers). 42 U.S.C. Sec. 2000e-5(g)(1) gives courts the power to "order such affirmative action as may be appropriate, which may include ... any ... equitable relief as the court deems appropriate." We are also mindful that Title VII's clear purpose is "to make persons whole for injuries suffered on account of unlawful employment discrimination." Hameed v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 396, 637 F.2d 506, 522 (8th Cir.1980) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)).
 
 
 31
 Our holding is supported by Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), in which the Court held that adjusting an attorney's fee award against a state under 42 U.S.C. Sec. 1988 to account for delay in payment was appropriate and not barred by the Eleventh Amendment. Id. at 284, 109 S.Ct. at 2469-70. In a footnote, the majority explicitly rejected Justice O'Connor's dissenting view, in which she was joined by Chief Justice Rehnquist and Justice Scalia, that the Eleventh Amendment requires an "ultrastrict rule of construction for interest awards" comparable to the "federal no interest rule." Id. at 281 n. 3, 109 S.Ct. at 2468 n. 3. In light of Jenkins, other circuits have also refused to impose a strict rule of construction protecting state defendants against prejudgment interest awards. See Reopell v. Massachusetts, 936 F.2d 12, 15 (1st Cir.) ("[I]nterest is includible [against a state defendant] if, under normal litigation principles and rules of statutory construction, a court could have been expected to allow prejudgment interest on the underlying recovery."), cert. denied, 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991); Pegues, 899 F.2d at 1454 ("Congress did not limit the tools with which courts could fashion relief to victims of discrimination perpetrated by state defendants.") (emphasis added).
 
 
 32
 We further reject the defendants' contention that the district court's award of prejudgment interest was an abuse of discretion given the lengthy interval between the court's finding of liability and its award of damages.[21] The finding of liability placed the defendants on notice that they would ultimately face monetary damages. In light of Title VII's "make whole" policy and the falling value of the dollar over time, the district court was justified in awarding the plaintiffs prejudgment interest.
 
 VI.
 PREVAILING PLAINTIFFS
 
 33
 Although the district court denied relief to a number of individuals for various reasons (none of whom appeal), the court found that eleven individuals should be compensated for damages. Below we summarize the claims, the court's findings and awards, and our holding applicable to each individual.
 
 
 34
 Helen Floyd. Floyd was awarded $9,584 in damages and $14,551 in prejudgment interest for a total of $24,135. The district court found that Floyd, who stopped working at Glenwood in 1980, missed the cut-off date for her Title VII claim. She did not appeal this ruling. Thus, her claim turns on Sec. 1981. The district court found the defendants liable to Floyd for "a hostile work environment based on racial discrimination," The 1993 Order, at 33, which is not cognizable under Patterson. Thus, we reverse the judgment in favor of Floyd and vacate her award of damages.
 
 
 35
 Donita Duncan. Duncan was awarded $87,105 in lost wages and $50,361 in prejudgment interest for a total of $137,466. Duncan worked at Glenwood for six weeks in 1981 before being terminated "allegedly" for excessive absenteeism. The 1993 Order, at 36. She contended she did not receive any written or verbal reprimands or any counseling prior to being discharged. Based on absenteeism, Glenwood did not recommend her for rehire and gave her an adverse recommendation on her applications for subsequent employment. As a result, she worked at various minimum wage and part-time jobs in the following years. In November 1990, Duncan was rehired by Glenwood, where she worked until voluntarily quitting one year later. The court awarded Duncan damages for 1981 to 1990 based on wrongful termination.
 
 
 36
 We find that the court's award cannot be sustained.[22] The record establishes that employees are on probation for the first six months and, unlike permanent employees, are not entitled to progressive discipline. The court's finding that Duncan was discriminatorily denied progressive discipline is not supported by the record. The court compared the lack of progressive discipline for Duncan with a permanent caucasian employee who received progressive discipline for comparable violations, but there is not a sufficient basis in the record to conclude that the failure to give Donita Duncan progressive discipline was racial discrimination against her as compared to caucasian probationary employees.
 
 
 37
 It is also clear that Duncan was awarded damages, notwithstanding her alleged absenteeism, while other probationary employees who were similarly found to have attendance problems were denied relief.[23] As the court pointed out, the only difference was that Duncan was also given an adverse recommendation based on her absenteeism when she applied elsewhere. There is not a sufficient basis to conclude that her discharge was the result of disparate treatment based on race and thus the defendants' subsequent adverse recommendation based on absenteeism provides no basis for damages. We reverse the judgment in favor of Duncan and vacate her award of damages.
 
 
 38
 Lisa Voyd.[24] Voyd was awarded $55,238 in damages and $32,132 in prejudgment interest for a total of $87,370. Voyd was employed as an entry-level child development worker at Glenwood from July 1979 to November 1981, when the court found that she was constructively terminated in violation of Title VII[25] because she quit in the belief that there was no chance for advancement or fair treatment. The court credited her testimony that she observed caucasian employees with less experience get promoted ahead of Annette Winbush and herself; that she was not invited to med-giver classes while caucasian employees were, despite her expressed interest in becoming a med-giver; and that she had applied for a clerical position which was filled by "someone who was already in there, in direct violation of the merit system." The 1993 Order, at 32. The court awarded her damages for lost income from 1982 to 1990. Although the defendants strenuously dispute the district court's findings,[26] we find the award to Voyd is not clearly erroneous.
 
 
 39
 Rita Williams. Williams was awarded $34,771 in lost income and $10,271 in prejudgment interest for a total of $45,042. She worked at Glenwood for four months from September 1985 to January 1986, when she was terminated for insubordination following an argument she had with a supervisor after refusing to bathe a resident before his scheduled time. She had previously been disciplined for giving "inappropriate positive reinforcement" to an African-American resident who was in restraints because she had washed blood and tears from his face. The district court noted that Williams "claimed ... she was not given any clarification of her job duties" and that she testified she had been told a supervisor had called her a " 'black bitch' " and wanted " 'to get rid of' " Williams. The 1990 Order, at 29-30. The court found "Williams was discriminated against and her terms and conditions of employment were severely affected by the hostile racial working environment at Glenwood" and awarded Williams damages from lost income for 1986 to 1991. The 1993 Order, at 31. Although there is admittedly hearsay involved, we find the overall hostile work environment substantiates the court's finding of wrongful termination in violation of Title VII.[27] We cannot find the award is clearly erroneous and we uphold Williams's award.
 
 
 40
 Harley Cooper. Cooper was awarded $110,845 in damages plus $79,495 in prejudgment interest for a total of $190,340. Cooper was hired at Glenwood in 1975 as an activities specialist, became a vocational rehabilitation specialist in 1976 and a treatment project supervisor in 1986 pursuant to his request for reclassification, and worked at Glenwood in supervisory roles through 1992. When Cooper was hired, he had a B.A. in psychology, had completed some graduate work, and had served for twenty-two years in the Air Force. Cooper had applied numerous times for supervisory positions prior to his promotion in the late 1980s but was rejected for a variety of reasons. The district court found (and the record supports) that "[i]t is clear that Cooper was denied positions for which he was qualified and that, through the use of the preselection process, his chances of advancement were virtually eliminated." The 1993 Order, at 34. The district court awarded him damages for 1977 to 1992 assuming that he would have been hired at a supervisory level in 1975 and elevated to an administrative position in 1979.[28]
 
 
 41
 In response to one unsuccessful effort to obtain a promotion in 1981, Cooper filed a claim with the EEOC and the Iowa Civil Rights Commission. The Commission found no probable cause, but issued Cooper a right-to-sue letter on June 15, 1983. Cooper did not sue. In Anderson v. Unisys Corp., 47 F.3d at 309, we held that
 
 
 42
 [t]hose plaintiffs who ... file administrative charges ... should be bound by the statute of limitations, which is normally stated in the right-to-sue letter. Even if those plaintiffs are piggybacking on another employee's timely administrative charge, once they file separate administrative charges, they cannot rely any further on the other claimant's actions and must timely file suit after receiving their right-to-sue letters. Thus, any claimant who files an administrative charge and receives a right-to-sue letter from the EEOC must file suit within ninety days after receiving that letter to preserve the cause of action.
 
 
 43
 By the terms of Cooper's right-to-sue letter, he had ninety days after June 15, 1983, to file suit. Under Anderson, a decision which was not available to the district court, we hold that Cooper's failure to file suit bars him from recovering under Title VII for any injuries he suffered prior to the expiration of his right-to-sue period.[29] However, Cooper may still piggyback on the filings of Winbush and Clark for his Title VII claims which may have accrued after the expiration of his right-to-sue period. Since the district court erroneously awarded damages from 1979, we need to remand for findings of fact relating to Cooper's Title VII claims, if any, which may have arisen after September 15, 1983 (ninety days after the June 15, 1983, right-to-sue letter).
 
 
 44
 Cooper may also be able to recover under his Sec. 1981 claim, however. Suits under Sec. 1981 do not require the administrative exhaustion procedures found under Title VII. See Patterson, 491 U.S. at 181, 109 S.Ct. at 2374-75. The pendency of the class action lawsuit by Annette Winbush and Marie Clark tolled the statute of limitations on Cooper's Sec. 1981 claim, allowing Cooper to intervene in 1992 when the district court rejected the motion to recertify the class. The record, however, provides no factual basis for judging on appeal whether the administrative position to which the district court assumed Cooper would have been promoted qualifies as a "new and distinct relation between the employee and the employer" under Patterson, 491 U.S. at 185, 109 S.Ct. at 2377, such that the failure to promote Cooper is cognizable under Sec. 1981. Thus, we vacate the award of damages to Cooper and remand for the district court to determine the defendants' liability and damages, if any, under Sec. 1981.
 
 
 45
 Beverly Davis. Davis was awarded $71,801 in damages and $15,855 in prejudgment interest for a total of $87,656. Davis worked at Glenwood for two months in 1977, when she was terminated. She worked in entry-level positions from February 1980 to October 1988 when she voluntarily resigned from Glenwood to care for her mother. The district court found that she was discriminated against in work assignments and was affected by a hostile racial working environment. Davis never applied for a promotion and testified twice that she was not interested in being promoted to a supervisory position,[30] but the district court assumed (for purposes of calculating damages) that she would have been promoted to a supervisor in 1985, based on Davis's later testimony that she would have accepted a supervisory position if offered one.
 
 
 46
 We find the damage award following October 1988 is clearly erroneous since Davis voluntarily left Glenwood to care for her mother. We also find that basing her award on an assumed promotion in 1985 in which she was not interested is clearly erroneous.[31] Finally, the basis of the pre-1985 award is not clear. Thus, we vacate Davis's award and remand to the district court to clarify the reasons, if any, for the award from 1981 to 1984.
 
 
 47
 Nora Duncan. Duncan was awarded $103,224 in damages and $33,260 in prejudgment interest for a total of $136,484. Duncan was hired at Glenwood in 1972 as an instructor's aide, became a vocational instructor's aide in 1976 (an entry-level position she held until 1990 when her position was reclassified), and worked at Glenwood through 1992. All of Duncan's work evaluations were positive. The court found (and the record supports) that she was discriminated against in promotions, work assignments, and a hostile racial working environment in violation of Title VII.[32] The court found that she was discouraged from seeking promotions by Harley Cooper's experience. The court based its damage calculation on her being promoted to a vocational instructor position in 1981. We affirm the court's award of $136,484.
 
 
 48
 Marie Clark. Clark was awarded $29,867 in damages and $18,229 in prejudgment interest for a total of $48,096. Clark was hired in December 1976 and worked in entry-level positions at Glenwood through 1992 without a promotion. Clark received consistently high ratings in her evaluations, but testified that the experience of other African-Americans discouraged her from applying for promotions. The court found (and the record supports) that Clark suffered from a hostile racial work environment and was discriminated against in promotions in violation of Title VII.[33]
 
 
 49
 The district court reasonably assumed that Clark would have been promoted in 1979 and in 1984. Because the cut-off date for damages under Title VII is August 7, 1979, her award for that year must be limited to five months. Further, the record contains no evidence regarding damages except Exhibit 1019, which the court expressly disagreed with as to the timing of Clark's promotions. Accordingly, we vacate Clark's award and remand to the district court to recalculate damages for 1979 and to clarify the basis of the court's calculations in making its award.
 
 
 50
 Elzie Pittman. Pittman was awarded $22,719 in damages and $19,990 in prejudgment interest for a total award of $42,709. Pittman was hired in April 1977 and worked in entry-level positions at Glenwood through 1992 without a promotion. Pittman received numerous letters of commendation and was employee of the month on four occasions. The district court found (and the record supports) that Pittman was discriminated against in discipline, work assignments, and promotions in violation of Title VII.[34]
 
 
 51
 The district court reasonably assumed that Pittman would have been promoted in 1979 and in 1982, and he recovered for the period from 1979 to 1988 when his actual income caught up to his potential income. However, because under Title VII backpay awards are limited in this case to August 7, 1979, Pittman's award for that year must be reduced. Thus, we vacate his award and remand to the district court to recalculate his damages.
 
 
 52
 Annette Winbush. Winbush was awarded $26,848 in damages and $30,865 in prejudgment interest for a total of $57,713. Winbush was hired in October 1975 and worked at Glenwood until April 1987 when she became disabled. For most of her career she worked in entry-level positions, although she also served as a med-giver from 1976 to 1983, when she was removed for allegedly failing to perform certain duties. In 1981, Winbush also temporarily performed the duties of an acting supervisor, but subsequently did not receive a permanent supervisory position. The court found (and the record supports) that Winbush was discriminated against in terms of promotions, work assignments, and disciplinary matters in violation of Title VII.[35]
 
 
 53
 In calculating Winbush's potential income, the district court reasonably assumed that Winbush would have been promoted to a supervisory position in 1983. Winbush stopped working in 1987 as a result of becoming disabled. The court determined her disability was not job related due to the lack of medical testimony and thus refused to award damages after 1987. Winbush was awarded damages from January 1, 1979, through December 31, 1987. By the court's reasoning regarding her disability, however, Winbush should not be able to recover after April 1987 when Winbush left Glenwood due to her disability. Moreover, the basis of her pre-1983 damages is not clear and, under Title VII, backpay cannot be awarded in this case prior to August 7, 1979. Thus, we vacate Winbush's award and remand to the district court to clarify the basis of her damages before 1983 and to recalculate her damages consistent with this opinion.
 
 
 54
 Terrance Jordan. Jordan was awarded lost income of $20,982 from 1984 to 1989 plus prejudgment interest of $10,773 for a total of $31,755. He was employed in an entry-level position from July 1982 to August 1989, when he voluntarily left Glenwood in favor of a higher-paying job. The court found that Jordan "unquestionably suffered from a hostile working environment because of racial discrimination" and that he "would have advanced at Glenwood absent the discriminatory practices there." The 1993 Order, at 33.
 
 
 55
 We think the record supports the finding that Jordan was discriminated against in violation of Title VII.[36] Exhibit 1037 contains several commendations Jordan received for his work. He was qualified for supervisory positions through experience and education (including a college degree in special education for mentally handicapped and emotionally disturbed children) and properly applied for educational and supervisory positions. The district court gave credit to his testimony that two white employees had been given acting supervisor positions and promoted to permanent supervisory positions ahead of him. Although his personnel files indicate he had some problems with absenteeism and tardiness, the district court found that Glenwood discriminated between employees in its discipline based on absenteeism.
 
 
 56
 We find, however, that the court's award of damages to Jordan involved several calculations based on erroneous numbers. We hold that for the years for which copies of Jordan's W-2 Wage and Tax Statements are available,[37] Jordan's "Actual Income" as stated on Exhibit 1037A should be the amount of "[w]ages, tips, other compensation" reported on his W-2 statements. The justification for this discrepancy between Exhibit 1037A and the W-2 statements is not shown on the record. Thus, although we affirm the defendants' liability to Terrance Jordan under Title VII, we remand the damages issue to the district court for recalculation.
 
 CONCLUSION
 
 57
 We reverse the judgment for Helen Floyd and vacate her award because her Sec. 1981 claim for hostile work environment is not cognizable under Patterson and the district court found her Title VII claim was time barred.
 
 
 58
 We affirm the judgment and damage awards for Lisa Voyd and Rita Williams under Title VII. We reverse the judgment for Donita Duncan under Title VII as not supported by the record. Because Sec. 1981 claims for wrongful termination are not cognizable under Patterson, we dismiss the Sec. 1981 claims of Lisa Voyd, Rita Williams, and Donita Duncan with prejudice.
 
 
 59
 We vacate the judgment for Harley Cooper under Title VII and remand for reconsideration. We also vacate his judgment under Sec. 1981, but remand to the district court to determine defendants' liability and damages, if any, to him under Patterson 's standard for Sec. 1981 failure-to-promote claims.
 
 
 60
 We affirm the judgment for Beverly Davis under Title VII, but vacate her damage award for the years after 1985 as without support in the record and remand to the district court to clarify the basis, if any, for her pre-1985 award. Because Davis's claim cannot fairly be characterized as a failure-to-promote claim, we dismiss her Sec. 1981 claim with prejudice.
 
 
 61
 Finally, we affirm the judgment and damage award for Nora Duncan under Title VII. We also affirm the judgments for Marie Clark, Elzie Pittman, Annette Winbush, and Terrance Jordan under Title VII, but remand their damage awards for recalculation consistent with this opinion. Since we need not decide their failure-to-promote claims under Sec. 1981, we dismiss their Sec. 1981 claims without prejudice.
 
 
 
 *
 The HONORABLE BRUCE M. VAN SICKLE, United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 The individual defendants in this action are William Campbell, School Superintendent, Rich Bowman, Personnel Director, Max Moore, Treatment Program Administrator, and Richard Crawford, Resident Treatment Supervisor II. Initially, the state governor and attorney general were named defendants, but claims against them were later dismissed
 
 
 [2]
 The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa, presiding
 
 
 [3]
 The court decertified the class because some plaintiffs could not show their claims "were sufficiently typical or similar to all other claims" and it was "more equitable to grant relief to the small number of claimants who can actually show disparate treatment of any type." The 1990 Order, at 52
 
 
 [4]
 The district court declined to consider the plaintiffs' Thirteenth Amendment claims separately because Sec. 1981 was enacted pursuant to Sec. 2 of the Thirteenth Amendment and the court found the plaintiffs did state a Sec. 1981 claim. The 1990 Order, at 53 n. 10
 
 
 [5]
 The district court found injunctive relief was "unnecessary" because the State of Iowa had adopted an affirmative action plan that would address the discrimination at issue in this suit. The 1990 Order, at 72-73
 
 
 [6]
 It is well-settled that Sec. 1983 does not provide a separate claim for relief. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617-18, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Here the only claim asserted under Sec. 1983 is the Sec. 1981 claim
 
 
 [7]
 The Civil Rights Act of 1991 added Sec. 1981(b) to overrule Patterson. In Rivers v. Roadway Express, Inc., --- U.S. ----, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), the Supreme Court held the Act should not be retroactively applied to pending cases or preenactment conduct
 
 
 [8]
 Given the circumstances in this case, awards for damages under Title VII should be at least as great as those available under Sec. 1981. First, neither Sec. 1981 nor Title VII provide recovery for non-pecuniary damages resulting from a hostile work environment prior to the Civil Rights Act of 1991. Under Sec. 1981, such a claim was not cognizable, see Patterson, while under Title VII, plaintiffs were generally limited to lost wages and other fringe benefits. Landgraf v. USI Film Prods., --- U.S. ----, ----, 114 S.Ct. 1483, 1491, 128 L.Ed.2d 229 (1994). In Landgraf, the Supreme Court held that the compensation provisions of the Civil Rights Act of 1991 do not apply retroactively. Id. at ----, 114 S.Ct. at 1508
 Second, the trial court held that under Sec. 1981, all claims arising before April 23, 1980, are barred by the two-year statute of limitations under Iowa Code Ann. Sec. 614.1(2) (West Supp.1995), since suit was filed on April 23, 1982. This ruling was not appealed. Under Title VII, 42 U.S.C. Sec. 2000e-5(g)(1), damages in the form of backpay cannot accrue from a date more than two years prior to the filing of EEOC charges, which occurred on August 7, 1981, and thus the trial court held that backpay could not be awarded for events prior to August 7, 1979. The August 7, 1979, cut-off under Title VII is more generous than the April 23, 1980, cut-off under Sec. 1981.
 
 
 [9]
 The defendants argue that the right-to-sue letters only named Glenwood as the defendant, not the individual defendants. They argue that had the plaintiffs offered the right-to-sue letters at trial, "Defendants would have objected because only the school was named as Defendant." Brief for Appellant at 32
 Although unclear, we read this as a complaint that the individual defendants were not named in the EEOC right-to-sue letter, and thus the lawsuit could not properly be brought against them. We find that this claim is without merit because there is a " 'sufficient identify of interest' " between the individual defendants and Glenwood to provide notice to the individuals of the EEOC charges. Greenwood v. Ross, 778 F.2d 448, 451 (8th Cir.1985) (quoting Romero v. Union Pac. R.R., 615 F.2d 1303, 1311 (10th Cir.1980)). Moreover, if the defendants had wished to make this argument at trial, they should have introduced the right-to-sue letters themselves, rather than waiting for the plaintiffs when the plaintiffs were under no obligation to do so.
 
 
 [10]
 Plaintiff Donita Duncan included in her motion to intervene her charge of discrimination filed with the Iowa Civil Rights Commission that indicated she also wanted the charge filed with the EEOC. Thus, she met Title VII's jurisdictional requirements both through her own filings and by piggybacking on Annette Winbush's and Marie Clark's filings, as discussed below
 
 
 [11]
 Harley Cooper presents a unique issue in that, unlike the other intervenors, he had filed a complaint with the EEOC but subsequently failed to file suit within the requisite ninety days. We address this issue below
 
 
 [12]
 The defendants claim they suffered prejudice as a result of the intervention because (1) they lost conciliation opportunities before the EEOC together with its time bar defenses and (2) the court lacked jurisdiction over the individuals after decertifying the class. We have already addressed (and rejected) the defendants' claim about lost opportunities for conciliation in Part III(B), supra. We also reject the defendants' claim that decertification of the class stripped the court of jurisdiction to award individual damages to every plaintiff except Winbush, Clark, and Duncan. See Lusardi v. Lechner, 855 F.2d 1062, 1079 (3d Cir.1988) ("A court which rejects a class as improper has no power to bind class members not properly before it."). We find that the decision to permit intervention brought the plaintiffs properly before the court and gave the court jurisdiction to award individual damages to the intervenors. See, e.g., Briggs v. Anderson, 796 F.2d 1009, 1022-23 (8th Cir.1986)
 
 
 [13]
 In Marzec, this court held that "[t]o establish a prima facie case of discrimination in a failure-to-promote case, the plaintiff must establish (1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied." Id. at 395-96
 
 
 [14]
 The court found that
 an "acting supervisor" at Glenwood was an employee selected to serve in a temporary capacity as supervisor until such time as a permanent supervisor was appointed pursuant to the certification procedure outlined in the Rules of the Iowa Merit System. An acting supervisor position is not recognized in Rules of the Iowa Merit System.... [P]assages of [Harley] Cooper's testimony accurately portray that the effect of Glenwood's use of the acting supervisor position as a preselection process permitted Glenwood to effectively circumvent the merit rules and systematically discriminate against [African-American] employees at Glenwood in regard to promotion....
 ... [T]he "acting supervisor" position constitutes a discriminatory pre-selection process, which process, 99% of the time, did not include [African-Americans].
 Id. at 58-59 & n. 13.
 
 
 [15]
 A "med-giver" is a certified medications aide. The position entailed different job duties from the entry-level residential treatment worker position, a small raise of fifteen cents per hour, and, most importantly, was considered a first step toward job advancement. The district court found this position was "assigned to selected employees on the basis of discretionary and subjective recommendations by supervisory personnel.... Only one of the [African-American] plaintiffs, Annette Winbush, ever became a med-giver. Other plaintiffs credibly testified they asked and/or wished to be considered for the med-giver position, but were not considered." Id. at 8-9
 
 
 [16]
 On our review of the record, we find no evidence establishing that the tests and interviews are significant screening mechanisms. At oral argument, however, the defendants maintained that it was not their burden to prove that IDOP certification was meaningful. This is consistent with their position that the plaintiffs had failed to make a prima facie case and therefore the defendants never had the burden of production. The defendants fail to recognize, however, that their discriminatory practices can excuse plaintiffs from making a typical prima facie case of employment discrimination
 
 
 [17]
 Nora Duncan worked at Glenwood from 1972 to 1992, Harley Cooper from 1975 to 1992, Beverly Davis from 1981 to 1992, and Terrance Jordan from 1982 to 1991. The court assumed that, absent discrimination, Cooper would have been promoted to an administrative position in 1979 and Duncan would have been promoted to a vocational specialist position in 1981. Jordan and Davis were assumed to have been promoted to higher supervisory positions in 1985. We have no basis in the record for knowing how many supervisory level promotions occurred at Glenwood in 1985, or indeed, in any other year. Given their long tenure at Glenwood, however, it is reasonable to assume that each would have received a promotion to a higher level at some point and the court's use of 1985 as a date of promotion is not unreasonable or speculative
 
 
 [18]
 The fact that the plaintiffs fulfilled a prima facie case of racial discrimination means that the district court could find intentional discrimination in violation of Title VII. See St. Mary's Honor Center v. Hicks, --- U.S. ----, ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Here, the district court explicitly found that the defendants intentionally discriminated against the plaintiffs based on their race, see The 1993 Order, at 11-12, and in those cases were we uphold the award, we find the record supports the district court's decision
 
 
 [19]
 The defendants also argue that the district court failed to allow them to mitigate damages under Title VII by refusing to compel discovery of the plaintiffs' employment histories, plaintiffs' tax records, and certain other documents relating to damages. Given the trial court's finding that the defendants eventually got "all available information," The 1993 Order, at 8, we find that it was within the trial court's discretion to refuse to deny damages on the basis of the plaintiffs' delays in providing discovery
 
 
 [20]
 The defendants urge that prejudgment interest against state defendants under Title VII has been denied by district courts in this Circuit. See Catlett v. Missouri State Highway Comm., 627 F.Supp. 1015 (W.D.Mo.1985). In Catlett, the court, noting that 42 U.S.C. Sec. 2000e-16 had been interpreted by some courts as precluding prejudgment interest against the federal government, reasoned that a state is "more analogous to the federal government than to private sector employers" and thus denied prejudgment interest. Id. at 1019. In 1991, however, Congress amended 42 U.S.C. Sec. 2000e-16(d) to permit interest in awards against the federal government. The reasoning of Catlett now leads to the conclusion that prejudgment interest should be allowed against state defendants because it is also allowed against the federal government
 
 
 [21]
 In EEOC v. Rath Packing Co., 787 F.2d 318, 333-34 (8th Cir.1986), cert. denied, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986), cited by the defendants, we found no abuse of discretion in the district court's denial of prejudgment interest where: (1) the defendant was in a precarious financial situation; (2) no plaintiff could have obtained the rate of interest asked for; (3) delay made the award inequitable; and (4) an award would have required sacrifices by current employees. The only similar factor that appears on the record here is delay, which we do not think should necessarily preclude prejudgment interest
 
 
 [22]
 Duncan's claim for wrongful termination is not cognizable under Sec. 1981 under Patterson, and thus we analyze her claim under Title VII
 
 
 [23]
 The court had earlier rejected the claims of two probationary employees, Willie McBride and Marilyn Thompson, who had been discharged for absenteeism. The court found these terminations were justifiable and not based on race. The 1990 Order, at 44, 45
 
 
 [24]
 Lisa Voyd also appears in the record as Lisa Voyd-Langford and Lisa Sue Voyd
 
 
 [25]
 Voyd's claim for wrongful termination is not cognizable under Sec. 1981 under Patterson, and thus we analyze her claim under Title VII
 
 
 [26]
 At both the liability and damages phases of the trial, the defendants contended that Voyd was not constructively terminated but volunteered to leave Glenwood to move to Washington with her husband. Based on its examination of the witnesses, however, the district court credited Voyd's testimony that she would have stayed at Glenwood if there was an opportunity for her to advance
 
 
 [27]
 Williams's claim for wrongful termination is not cognizable under Sec. 1981 under Patterson, and thus we analyze her claim under Title VII
 
 
 [28]
 Under Sec. 1981, Cooper is barred from recovering any damages sustained more than two years prior to the filing of this suit, or before April 23, 1980. Under Title VII, Cooper could not recover damages prior to August 7, 1979
 
 
 [29]
 The EEOC issued Cooper's right-to-sue letter in response to his complaint regarding an incident at Glenwood in which he received no actual notice of an opening for a supervisory position, even though Glenwood knew he had applied for such positions previously. It is well-settled, however, that he would have been able to include related claims of discrimination in a lawsuit based on this letter. See, e.g., Anderson v. Block, 807 F.2d 145, 148 (8th Cir.1986); Satz v. ITT Fin. Corp., 619 F.2d 738, 741 (8th Cir.1980); Oubichon v. North Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir.1973)
 
 
 [30]
 Tran. 3743
 
 
 [31]
 Because Davis testified she was not interested in a promotion, we also dismiss her Sec. 1981 claim with prejudice and analyze her claims only under Title VII
 
 
 [32]
 Because we sustain Duncan's judgment under Title VII, we dismiss her claim under Sec. 1981 without prejudice
 
 
 [33]
 Because we sustain Clark's judgment under Title VII, we dismiss her claim under Sec. 1981 without prejudice
 
 
 [34]
 Because we sustain Pittman's judgment under Title VII, we dismiss his Sec. 1981 claim without prejudice
 
 
 [35]
 Because we sustain Winbush's judgment under Title VII, we dismiss her Sec. 1981 claim without prejudice
 
 
 [36]
 Because we sustain Jordan's judgment under Title VII, we dismiss his Sec. 1981 claim without prejudice
 
 
 [37]
 The record contains W-2 statements for Jordan from 1983 to 1985 and 1988 to 1989